Is this the third time? Well, it's certainly the second time for you, second time for me. Shall we calendar ourselves for next year? I think Appellant's point at this point is it should be the last time since you shouldn't have come here a second time. And that's really one of the key issues on this appeal. There's a jurisdictional problem with this case that once Judge Reel remanded the case back to the U.S. State Court and the case was removed again, he didn't have the jurisdictional power to hear the court, the case. Let me ask you one thing. You know, Homestead argues that Seidman doesn't preclude this removal because there was an intervening change of circumstance such that the removal petition number two is substantively not the same as removal petition number one. Given that at the time number one was decided, there were nondiverse defendants and the issue was fraudulent joinder, whereas number two, that issue was gone and so were the nondiverse defendants. It's the same issue again. Because first of all, the issue is when the case was first brought, whether it's fraudulently joined. So they had to go back to that issue again when this case was removed the second time. The issues were identical. As a matter of fact, as we point out in our brief, they tacitly conceded when they say that the – they tacitly conceded when they say essentially that this was a wrong decision by Judge Reel the first time. The arguments were the same. The parties involved on a fraudulent joinder were the same. The issues were the same. All that happened here was Judge Reel decided differently. Well, I would suppose because the nondiverse defendants weren't part of the case anymore. No, he did it differently because he says now there's proof here, theoretically, that I was wrong. And that you can't do under Seidman. Okay. And that's the problem here because the issues were identical. They're aligned. There's nothing new here. We're dealing with the same parties, the same claims of fraudulent joinder. And when Judge Reel decided first time around there's no fraudulent joinder, he can't change his mind again. And that's precluded by Seidman in a long line of cases. The other problem is that substantively he was wrong. As illustrated by Ludgate and Lockheed, this was not a fraudulent joinder from the outset. And what happened here was that my clients were deprived of the opportunity to even appeal the decision by the state court judge as to the demur because before there was a judgment entered, it was removed. So we couldn't even appeal it in state court because there was no case to appeal from. What's happened here essentially is that my client was deprived of the opportunity to argue that the demur was improperly granted. And subsequently we gave a letter brief because it was quite a long time since we briefed this case, was that in the Lockheed case they confirmed what our position would have been at the court of appeal, that when a party seeks declaratory relief against an excess insurance carrier, they don't have to prove that there is exhaustion. They have to allege it. It's an issue to be determined. There's a controversy. And that's all the California courts require for there to be declaratory relief determinations. So as a result, even if we get past the point of Judge Reel concerning this case, there was no fraudulent joinder as a matter of law because the standard is, is this a sham? Was it a sham that my clients joined these non-diverse excess insurance carriers? And clearly it was not. Finally, with respect to jurisdiction, we have the one-year time bar rule. And that's been violated here because it's only within a one-year time period can you actually do removal. And the argument by Homestead that there's some sort of equitable estoppel falls out of space because they're making the same argument the second time around that they made the first time around, so they haven't been harmed in any way. It's just they didn't like the decision the first time around. And there has to be finality in determinations of removal because otherwise we get this ping-ponging back and forth between state court and federal court. And that's what Siemens seeks to avoid, and that's what 1447C seeks to avoid. Now, I can go to the issues of the constitutionality, 340.9, if the Court desires. I think we've briefed this fully. The one issue that I think I want to address is- You're just contending that a younger abstention applies, right, and we don't ever get there. We don't get there. And, again, I think we've really fully briefed these issues, and I know the Court's time is precious. If the Court wants me to address any of these issues, I can. I just want to ask one question. How does the settlement, the pre-Section 340.9 settlement affect the post-340.9 claims? Okay. First of all, 340.9 has a section that deals with settlements, and what it says is that you have to have a settlement agreement in writing signed by an attorney. That didn't happen here. I don't know how they say there's a settlement here. All we have is an adjuster gives a claim pursuant to the policy requirements. They send a check, and somehow it's fairly difficult to read, but it says this settles the claim on the endorsement on the back of the check. Under California law, Civil Code 1542, that's not even an effective release for future claims because it has to be a full statement that claims that are not foreseen or known are waived. That wasn't done here. So even if there's conceivably a settlement agreement that can be construed, which I don't see how it can be. You're expanding that section a little bit broadly, aren't you, because surrounding facts also, can't they also be used to interpret whether the signature on the check has some impact? No. I think that section just says that if the signature on the check by itself in isolation does not constitute an accord and satisfaction. Do you disagree with that? That's the Commercial Code section. Correct. And I'm talking about the Civil Code section. Right, and that's what I'm talking about as well. They're somewhat similar. Well, the Civil Code section is a little bit different because that has actually a different impact. That impact has that under California law, if you're going to hold a party to a settlement agreement liable for facts and circumstances that they don't know about, there has to be explicit legal tracking that language. Right. And here, again, even if we got to that point, which I don't think we can, that's a question of fact. How can we get summary judgment? Admittedly a question of fact. But I don't think it's even a question of fact under these circumstances. So if Your Honors have no further questions, I'll reserve the rest of my time for rebuttal. Certainly. Mr. Kellner. Good morning. My name is Howard Wallets, and I represent Somestead Insurance Company. I'm sorry. I got it mixed up. Sorry. Everybody's mixed up today. We briefly addressed some points raised by the reply. First, as to jurisdiction. While the damages action, Kasdan v. Homestead, has been up and down a couple of times, one thing is clear. Homestead's declaratory judgment action has always been in the federal court. It has never left the federal court. There is no jurisdictional issue as to the declaratory relief action. Wasn't the issue that he should have abstained from that? I mean, didn't he at one point actually, you know, abstain from that? Well, yes, he abstained twice and was reversed twice on that. But not because we said that abstention wasn't applicable. We just said his reasoning was inadequate. That's right. And so then the third time when the motion to remand was made, he denied it. He considered the issues and denied remand, denied their motion. And the certification issued from the district court to the state court. So how do you get around Seidman? Because in Seidman, the district judge reconsidered and changed his prior order because of a clerical mistake. And he's not permitted to reconsider. Those are even worse facts than yours, though. You would think that if there's going to be relief, that a clerical error would be the basis of it. Yours is far more serious, is it not? No, the reason is that when you reconsider, it's clear that you're looking at the same removal and remand. Here, where it is sent down and comes back up and sent down again, and then Judge McCoy resolves the issue. He says the demurred must be sustained without leave to amend. Now we're not talking about an argument that there has been fraudulent joinery. We're talking about a second removal based upon a determination by the state court that these parties are or should not be parties to the action. But that was the determination that was made subsequent to the initial filing. The issue on fraudulent defendants is determined, is it not, at the time of the initial filing? That was the argument that we presented. Is that what the law is? Yes. Okay. So what difference does it make in terms of Seidman whether the state court later determines that these parties should never have been involved? Because at the time of the first one, both sides were arguing that we asserted there was fraudulent joinery, and Kasdan came back with all the reasons that it wasn't fraudulent. Right. The second time, we're not reconsidering Judge Reel's determination that he's going to decide in Homestead's favor based upon what was presented in terms of arguments. Now he has an actual ruling by the state court. These parties should not be here. So it was removed. But after the one-year time bar, so. Well, that's certainly true. Our position is that, of course, that there's an equitable tolling, and that if you would allow someone to fraudulently. Based on what I kind of, that argument kind of eludes me a bit. The argument is that if you allow a party to fraudulently join non-diverse parties, and, of course, by fraudulent we don't mean an actual fraud, we mean a term of art. If you allow them to do it, and then the proceedings in the trial court below drag out more than a year, they've been able to accomplish what they wanted by the fraudulent joinery. That's not fair. That's not equitable. And so there ought to be, and there is an exception to the strict one-year rule under equitable terms. It's not an equitable tolling. It's an equitable estoppel. The other side is estopped to assert it because of their conduct. I want to go back to the deceitment again. You know, your explanation for it, I think, does not track the language of the case. The actual language says that once a district court certifies a remand order to state court, it is divested of jurisdiction and can take no further action on the case. It cites a whole bunch of our cases there. And then it goes on to say, contrary to respondent's position, a second removal petition based on the same grounds does not reinvest the court jurisdiction. Now, I know you're saying it's not the same ground, but the fact is the allegations of the complaint other than the two defendants and the fraudulent joinery issue, it's exactly the same, isn't it? Yes. So why aren't these the same grounds? This is the same case, same facts, same people. The state court has said that you don't have these improperly joined people anymore, but it's the same case, the same grounds. I think we still have to go back and look at the statute. The statute doesn't say the same grounds. The statute says that the court shall not be reviewed by appeal or otherwise. Right. And our jurisprudence has interpreted it in the way that I just indicated. That's why I'm not following what you're talking about. You're suggesting that, in effect, you've got a whole different case. And I don't see that. Wherein does the district court get reinvested with jurisdiction once it loses it under Seidman? All I can say, Your Honor, is that it is not we're not suggesting it's a different case, but we're suggesting stating that it is not a reconsideration of the prior ruling. But does it matter? If there's no jurisdiction, does it even matter? I think if you look at the circumstances in Seidman where there was clearly reconsideration of a clerical error of a prior order, which the district court could not do. That is different from a situation where Judge McCoy rules that these parties are improper parties. But this brings me back to my point, which is all of that took place in the damages action. As to the declaratory judgment action where Homestead asked that the statute be held as applied between Homestead, non-admitted insurer, and Mr. Kasdan, the court always had jurisdiction over that. And so assuming that to be the case, the court then, the district court, ruled that as applied the law was unconstitutional. Even if there's an error with respect to the damages action, it really is moot at this point because unconstitutionality was an affirmative defense to the damages action. So this court has the discretion to affirm what the district court did and not send the damages action back down when it really is moot because the determination of unconstitutionality is race judicata between these parties. Yeah, but that begs the question of who's on first. How do you respond to Younger? I mean, the point is who should make that decision? And in the normal event, that decision is one that's appropriately made with the State courts. And in the normal event, with the State court damages action, which raises the same issue on the table, the Federal court would defer, wouldn't it? Yes, it can defer, but it also can reach the issue where, and I believe that the abstention we've all talked about, because I don't even think Younger was cited in the brief, I think we were talking about Brillhart abstention. Well, either way, I mean, as we said in Gilverson, I mean, the right pigeonhole, who knows. The point is the State court, I mean, the Federal court customarily defers when there is a pending damages action raising a State constitutional issue to let the State courts have the first crack at it, doesn't it? Yes. So if, so I'm not sure it moots it. I mean, the fact is if the remand order should not have been reconsidered, I mean, if that's where we're at, then the damages action never came back, and it was always in the State court. Well, I would still say, and I'll move on, under Brillhart, the court, the district court has the discretion nevertheless to hear the declaratory judgment action, and that discretion has been exercised, and it can only be turned around under this Court's reasoning, where the action was beyond the pale, and then an exercise of discretion is overturned. I don't think in this case, where the issue is the contract clause of the U.S. Constitution, that Judge Reel's determination to keep and decide the declaratory judgment action is an abuse of discretion. I would like to take a moment to switch to the settlement side of it, and the enforceability of the settlement, because it's clear from the more recent California cases, the four that we cited in our letter briefs, that the law in California is that the courts are looking at 340.9 as a statute intended to apply only to situations in which the statutory 2071 fire policy with essentially a statute of limitations are at issue. And not one of those decisions, with respect to settlements, referenced the issue of a California attorney. In fact, one of the cases specifically upheld a prior settlement or was not signed by a prior California attorney, and there's nothing in the legislative history suggesting a basis upon which the impairment of contract could be satisfied or ameliorated by a California attorney. The issue was not addressed. I'm sorry. That's what the statute says. I understand that. Did the California cases disavow that portion of the statute? No, they did not. They didn't address it. They just upheld a prior settlement without discussing the issue. Now, in our case, we have a settlement. The argument that, well, it really wasn't because, look, we had a second settlement check that was sent. In the record, of course, there is the proof of loss prepared by Mr. Kasdan's own paid public adjuster, a licensed public adjuster who can only work for insurers. A public adjuster cannot work for insurance companies. He's specifically licensed as a contingency fee arrangement. He submitted that, and on page 2 of the claim filled out by the public adjuster, it put in line 8, which is the amount withheld that would be paid to the insured depending upon whether the repairs were actually made. Because if repairs were made, then you move to the replacement cost coverage. And in this case, some two years later, there was proof that there had been an actual repair, $38,000 less than was estimated, and so Homestead immediately cut the check and gave them that portion of the withheld depreciation. It wasn't a second claim. It wasn't a reopening of the claim. And as specifically said in the proof of loss, it was always contemplated as a supplemental claim. I want to get back to the jurisdictional issue because I know you're arguing the merits here. You said this was an abuse of discretion under Gilbert. No, no, I said it was not. Okay. This is under Gilbertson. This is a de novo review on our part. Right. I said that in any event, it was not an abuse of discretion for Judge Miller to have kept it and decided it. That is not beyond the pale. I misunderstood. Because by my reading of Younger, the Supreme Court in Samuels extended Younger to require the district courts to dismiss declaratory relief actions even if the court has subject matter jurisdiction. The federal court can't intervene in a state civil proceeding even if the district court believes the proceeding was based on an unconstitutional statute, citing Huffman. And then under Gilbertson, a dismissal, not a stay, is appropriate because this was for declaratory relief and not for damages. Why is my reading of these cases incorrect? Because I believe that the judge had the discretion. He wasn't asked to make any determination based on Younger. That wasn't even before him. I understand that. But that doesn't obviate the requirement to comply with Younger, does it? No. So if Judge Reel did not follow Younger, even though nobody brought it up, he may still have a problem in terms of his ruling, would he not? Yes. Okay. Let me close with the notion that somehow this is unfair because Mr. Kazin didn't have a right of appeal. Under this Court's determination in the Butner case from the 60s, the district court on removal finds the case and deals with the case as is, as if everything that had gone on took place in the district court. And all that Mr. Kazin had to do was ask Judge Reel to adopt and enter an order. He wouldn't agree with it, but enter an order based upon what Judge McCoy had done, enter it as a judgment then, and then it would have been appealable to the Ninth Circuit. This is a case where the reasoning, the purpose of the authors in adopting 340.9 is not met under the circumstances between Homestead Insurance Company and Mr. Kazin, and we would urge you to uphold the ruling of the trial. Thank you. All right, counsel. Just literally one minute. I did want to mention on the issue of the younger doctrine, which we did cite the, we specifically referred to the younger doctrine, and cited to the, I think it's the Beltran case. Yes, the Beltran case. And the Beltran case, which is important, it refers to fresh internationalism for the three standards for the implication of the implementation of the younger abstention. One, is the state proceeding ongoing? Obviously, that will happen here. Two, does the proceeding implicate important state rights? I think when you're talking about the constitution of a state statute, that's clearly so. And will the state proceedings provide an adequate opportunity to raise Federal questions? Of course it will. It has to be abstained if it went back down. If there are no further questions, Your Honor, we'll rest on a brief. Thank you. Okay, thank you both for your argument. The matter just argued will be submitted. Thank you.
judges: Rymer, Wardlaw, Smith